# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-1836

_____

| | | |
|---|---|---|
| Christine Treanor, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| MCI Telecommunications | * | |
| Corporation, | * | |
| | * | |
| Appellee. | | |

_____

Submitted: October 18, 1999
Filed: January 7, 2000

_____

Before McMILLIAN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit
Judges.

_____

HANSEN, Circuit Judge.

Christine Treanor brought suit against her former employer, MCI
Telecommunications Corporation (MCI), alleging discrimination in employment on the
basis of a disability. She now appeals the district court's[1] grant of summary judgment
in favor MCI, and we affirm.

_____

[1]The Honorable David S. Doty, United States District Judge for the District of
Minnesota.

I.

Treanor began working for MCI as a special clerk in 1978. She received excellent ratings over the years, and by May 1990, she had climbed her way up the corporate ladder to the job of Senior Technical Consulting Services Manager for areas including Minnesota cities; Omaha, Nebraska; and Des Moines, Iowa. She was earning in excess of $100,000 per year. In January 1991, Treanor took her first medical leave of absence due to depression, chronic fatigue, and resulting concentration difficulties. MCI allowed Treanor to exhaust her vacation and sick leave, which she depleted by March 15, 1991. Thereafter, Treanor was absent on medical leave due to her illness for a period of approximately five months.

In August 1991, Treanor requested to return to her former position on a part-time basis and asked that the job be restructured to cover only the Minnesota territory. MCI policy allows reinstatement in the same or a comparable position for employees who have been on leave for 6 weeks (42 days) or less, but employees on leave for longer periods of time are not guaranteed reinstatement. Pursuant to this policy, Treanor was not eligible for automatic reinstatement. MCI informed Treanor that her prior position could not be split up into part-time work. MCI required Treanor to interview for a job as any other person would be required to do, unless she could obtain an unconditional release to work full-time within one week. Treanor obtained an unconditional release to work full-time, but not until the end of the month. She then interviewed for her former position over lunch one day in September 1991 but was not chosen for the job. MCI offered Treanor a lower-level position, and she returned to work full-time at MCI. Her former job of Senior Manager was not filled until December 1991.

Treanor worked full-time in the lower-level position until April 17, 1992, when she took a second medical leave of absence due to depression and fatigue. She continued on a personal leave of absence (lasting one year and four months) until August 1993, when MCI informed Treanor that she would be terminated unless she

could find work within the company by August 26, 1993. No part-time positions were available at that time according to MCI, and Treanor did not apply for any specific job. Accordingly, MCI terminated her employment.

Treanor brought suit claiming that MCI violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213 (1994), and the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363.01-363.15 (1991). She alleged that MCI engaged in a systematic pattern of disability discrimination from 1991 through 1993 by not accommodating her reasonable requests for part-time employment.

MCI moved for summary judgment. The district court granted the motion for summary judgment on the ADA and MHRA claims. The court concluded that Treanor's ADA claim failed because the 1991 conduct occurred prior to the effective date of the ADA and because she could not show she was qualified for any specific job when she attempted to return to work in 1993. As to the MHRA claims, the district court concluded that Treanor violated the MHRA's one-year statute of limitations with regard to the 1991 conduct and that the 1993 conduct failed to make out a claim for the same reasons the ADA claim failed. Treanor appeals the grant of summary judgment.

## II.

We review de novo a grant of summary judgment, applying the same standards as the district court. See Callas Enter. Inc. v. Travelers Indem. Co. of Am., 193 F.3d 952, 955 (8th Cir. 1999). Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when the evidence, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

### A. Continuing Violations Theory

The MHRA contains a one-year statute of limitations, requiring all charges of discrimination to be filed with the Equal Employment Opportunity Commission (EEOC) within one year of the alleged discrimination. See Minn. Stat. § 363.06, Subd. 3 (1991 & West Supp. 1999). Treanor filed a charge of discrimination with the EEOC on January 22, 1994. The district court held that any conduct occurring prior to January 22, 1993 (one year prior to her filing with the EEOC) was barred by the one-year statute of limitations found in the MHRA. Treanor asserts that her entire discrimination claim is timely because it is based on a continuing pattern of discriminatory behavior by MCI dating back to August of 1991, when she tried to return to her former job after her first medical leave of absence, and continuing to her termination in 1993. Treanor alleges that MCI's refusal to provide her with part-time work amounted to a pattern of "systematic denial of reasonable accommodation, coupled with MCI's ultimate termination of Treanor." (Appellant's Br. at 19.)

The MHRA's statute of limitations may be avoided by a legal theory known as the continuing violations doctrine. See Giuliani v. Stuart Corp., 512 N.W.2d 589, 595 (Minn. Ct. App. 1994). This doctrine tolls the statute of limitations in situations where a continuing pattern forms due to discriminatory acts occurring over a period of time, as long as at least one incident of discrimination occurred within the limitations period. See id. The doctrine is available when "the unlawful employment practice manifests itself over time, rather than as a series of discrete acts." Id. (internal quotations omitted). This manifestation, however, must be more than the mere consequences of past discrimination--"the proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." Sigurdson v. Isanti County, 448 N.W.2d 62, 67 (Minn. 1989) (internal quotations and emphasis omitted).

Treanor alleges a pattern of discrimination beginning with MCI's failure to accommodate her with part-time work in August 1991. She asserts that MCI's refusal to grant her request for part-time employment "forced" her to return to work full-time,

and in turn directly caused a relapse in her condition, necessitating her second leave of absence. She also asserts that MCI refused her request for part-time work when she tried to return in August 1993.

Treanor's complaints amount to two individual instances in which MCI did not provide her with part-time employment. These instances are separated by two years and are not connected by any intervening acts of discriminatory conduct. Even assuming that Treanor has stated a claim of discrimination from MCI's refusal to create a part-time position for her in 1991 or 1993, the record simply supports no inference of continuing discriminatory conduct to justify tolling the statute of limitations on the basis of continuing violations. Although Treanor asserts that her second leave of absence was the direct consequence of MCI's initial failure to accommodate her request for part-time employment, she provided MCI with a medical release allowing her to return to full-time employment in 1991. She chose to accept MCI's offer of full-time employment, and MCI should be entitled to rely on the medical release that Treanor provided. Treanor does not allege any intervening discriminatory conduct on the part of MCI. A mere consequence of an alleged discriminatory act is not sufficient to invoke the continuing violations doctrine unless it amounts to a discriminatory act itself. See Giuliani, 512 N.W.2d at 596.

We conclude that the district court did not err by applying the MHRA's statute of limitations unaltered by the continuing violations doctrine. As such, any alleged discriminatory conduct that occurred prior to January 1993 is beyond the scope of allowable claims under the MHRA. We note also that the 1991 conduct occurred before the ADA was effective, because the ADA rules applicable to employment did not take effect until July 1992. See 42 U.S.C. § 12111, note-Effective Date. Consequently, only the 1993 conduct can be considered when determining whether Treanor has created a genuine issue of material fact concerning discrimination under either the ADA or the MHRA.

B.  Qualified Disabled Person

Treanor asserts that summary judgment was inappropriate because material questions of fact remain concerning whether she was a qualified person with a disability.  To withstand summary judgment, Treanor must make out a prima facie case (1) that she is disabled within the meaning of the ADA, (2) that she is qualified, either with or without reasonable accommodation, to perform the essential functions of the job at issue, and (3) that she suffered an adverse employment decision because of her disability.  See Wilking v. County of Ramsey, 153 F.3d 869, 872 (8th Cir. 1998) (noting that claims under the ADA and MHRA are analyzed the same).  "Summary judgment is proper if a plaintiff fails to establish any element of her prima facie case."  Id. at 873.

We note that the district court assumed for purposes of summary judgment that Treanor was disabled within the meaning of the ADA, and we will engage in that same assumption.  The district court concluded, however, that Treanor failed to set forth facts sufficient to demonstrate that she was qualified to perform the essential functions of any specific job.  The district court noted that it could not evaluate whether Treanor was a qualified individual because Treanor did not identify any particular job for which she was qualified.

Treanor asserts that she created a material issue of fact concerning whether she was qualified.  Most of her argument, however, is based on her application for re-employment to her former position in 1991--an incident that we have concluded is outside the scope of allowable claims in this suit.  As to the August 1993 incident, Treanor asserts that she made clear her desire to obtain part-time employment, and she asserts that her 15 years of experience with MCI qualified her for many positions within the company, as long as the position was part-time.  She also complains that MCI did not assist her in finding a part-time job and did not allow her to use its inter-office e-mail system.

6

Under the ADA, part-time work and job restructuring may be considered reasonable accommodations. This does not mean an employer is required to offer those accommodations in every case. "Restructuring frequently involves reallocating the marginal functions of a job," and an employer is not required to reallocate the essential functions of a job. Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112-13 (8th Cir. 1995). The district court stated that MCI offered evidence that no part-time positions existed when Treanor sought work in 1993. Treanor questions the credibility of MCI's assertion that no part-time positions existed, but she has failed to proffer any evidence refuting MCI's contentions. Even assuming that the functions of her former position could have been reasonably restructured, there is no evidence that this position was available in 1993. Treanor has not specifically articulated in her brief any job for which she actually applied in 1993 or any job that could have been reasonably restructured to accommodate her request for part-time employment. Although her reply brief cites her deposition testimony, this testimony, at best, shows that she made some telephone calls to inquire about the availability of a position and found no openings. (See Appellant's App. at A-82 - A-86.) Treanor apparently wanted MCI to find or make a suitable position for her, but the ADA does not require an employer to create a new part-time position where none previously existed. See id. at 1114; see also Terrell v. USAir, 132 F.3d 621, 626 (11th Cir. 1998) (noting an employer is not required to carve out a part-time position where no part-time positions existed in the company).

To the extent Treanor claims that MCI failed to engage in an interactive process to determine a reasonable accommodation, see Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 950-54 (8th Cir. 1999),we conclude that Treanor failed to create a genuine question of fact in dispute on this issue. MCI knew of her disability and of Treanor's request for part-time work. In response, MCI indicated that no such position existed. There is no evidence that this information was false. There is no indication that others who had lost reinstatement rights due to an extended medical leave of absence were allowed to use the interoffice e-mail to search for suitable open positions. Treanor

7

made no assertion that any particular suitable job was available. Cf. id. at 950 (finding a question of fact where the plaintiff had made a facial showing that reassignment to a particular vacant position was possible). Furthermore, Treanor created no genuine dispute that MCI acted in bad faith by not further investigating the existence of a reasonable accommodation. See id. at 953 (summarizing that summary judgment is inappropriate where there is a genuine dispute over whether the employer acted in good faith in considering reasonable accommodations).

To conclude that a person is a qualified individual within the meaning of the ADA, the court must consider whether the person has "the requisite skill, experience, education and other job-related requirements of the employment position that such individual holds or desires." Weber v. Strippit, Inc., 186 F.3d 907, 916 (8th Cir.), (internal quotations omitted and emphasis added), petition for cert. filed, No. 99-732 (U.S. Oct. 27, 1999); see also Day v. Johnson, 119 F.3d 650, 656 (8th Cir. 1997) (noting in the Title VII context that the court "must ask whether the job applicant was qualified for a particular available position") (emphasis added), cert. denied, 118 S. Ct. 707 (1998). We agree with the district court's assessment that a court cannot evaluate a plaintiff's qualifications in a vacuum but must consider the specific essential functions of a particular job. The ADA does not prevent an employer from terminating a disabled person who is not qualified to perform the essential functions of a particular and available job.

Even if we assume for purposes of argument that Treanor has raised a question of whether she was qualified, she still has not presented sufficient evidence from which a jury could find that she was discharged because of her disability. MCI explained that it terminated Treanor because she had been on an extended leave of absence, after which she was unable to find suitable work within the company. The record supports this assertion; Treanor did not even apply for a position in 1993. See Wilking, 153 F.3d at 873 ("[W]hen an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether that reason was wise, fair,

or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.") (internal quotations omitted). "To demonstrate pretext, a plaintiff must present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason." Id. at 874 (internal quotations and alterations omitted). Treanor did not create a question of fact on pretext. As the district court noted, MCI presented evidence that no part-time positions existed in August 1993. Furthermore, MCI had granted her liberal leaves of absence to accommodate her medical condition. The record in this case simply does not support an inference that Treanor was terminated because of her disability.

III.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT