**EQUAL EMPLOYMENT OPPOR-TUNITY COMMISSION, Plaintiff, and**

**Paul B. Hummel, Plaintiff–Intervenor,**

v.

**FEDERAL EXPRESS CORPORATION, Defendant.**

**No. CIV 99–1477 DWF/AJB.**

United States District Court, D. Minnesota.

April 6, 2001.

Reuben Daniels, Dennis R. McBride, Equal Employment Opportunity Commission, Milwaukee, WI, for Plaintiff.

Joni M. Thome, Thome Law Office, Minneapolis, MN, for Plaintiff–Intervenor.

David Jordan–Huffman, Oppenheimer, Wolff & Donnelly, Minneapolis, MN, Michael J. Vint, Federal Express Corporation, Memphis, TN, Martin K. LaPointe, Burke, Warren, MacKay & Serritella, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

FRANK, District Judge.

### Introduction

The above-entitled matter was presented to the undersigned District Judge on October 17, 2000, pursuant to the parties'

cross-motions for summary judgment without oral argument. In the Complaint, Plaintiff EEOC alleges that Defendant Federal Express violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, by failing to accommodate, failing to engage in an interactive process upon Plaintiff Hummel's attempted return from medical leave, and ultimate termination due to Plaintiff Hummel's disability.[1] For the reasons set forth below, Plaintiffs' and Defendant's motions are denied.

### Background

In May 1993, Plaintiff Paul Hummel was hired as a permanent part-time employee by Defendant Federal Express Corporation ("FedEx"). For the majority of his time with FedEx, Mr. Hummel worked as a Cargo Handler at the Minneapolis–St. Paul Airport. On March 31, 1994, Mr. Hummel was promoted to the position of Heavyweight Handler to begin on May 1, 1994, however, he maintains that he only worked in this capacity for one day before becoming sick. From July 7, 1994 through August 1996, Mr. Hummel was on medical leave due to complications with Acquired Immune Deficiency Syndrome ("AIDS").

Shortly after beginning work for FedEx, Mr. Hummel completed insurance forms and disclosed to his supervisor, Mary O'Brien, that he was HIV-positive. While Mr. Hummel was out on his extended medical leave, his health deteriorated signifi-

1. The EEOC brought the original complaint filing claims under the ADA, and Mr. Hummel intervened, bringing his claims under both the ADA and the Minnesota Human Rights Act (MHRA). The Court is aware that, due to an outstanding motion for leave to file its answer to Mr. Hummel's complaint which was granted on March 27, 2001, Defendant has not addressed claims against it under the MHRA nor Plaintiff Hummel's claim of retaliation or reprisal. Nonetheless, the Court finds that, to the extent that Plaintiffs' complaints are overlapping, its analysis would be

the same. *See Miners v. Cargill Communications, Inc.*, 113 F.3d 820 (8th Cir.1997), *cert. denied*, 522 U.S. 981, 118 S.Ct. 441, 139 L.Ed.2d 378 (1997) (analyzing claims under the MHRA disability provision as analogous to claims under the ADA); *Roberts By and Through Rodenberg–Roberts v. KinderCare Learning Centers, Inc.*, 86 F.3d 844 (8th Cir. 1996) (same). With respect to Plaintiff Hummel's retaliation claim, the Court will allow for additional briefing consistent with the Court's reasoning in this order.

cantly, and, on one occasion, Ms. O'Brien visited Mr. Hummel, observing his severe medical condition. Some time after this visit, however, Mr. Hummel began a new drug treatment, and his health improved dramatically.

Plaintiff contends that, in August 1996, he contacted Ms. O'Brien, informing her that he wanted to return to work, and she informed him that he would need to present a medical release from his physician. On August 12, 1996, Mr. Hummel obtained a letter from Dr. Randon B. Woodworth which stated that Mr. Hummel's health had improved greatly and "... he would continue to improve and get back to his baseline where he was a year ago and he is 80% there already ...." Sometime during the early fall of 1996, Mr. Hummel presented Ms. O'Brien with the letter, and she forwarded the letter to FedEx headquarters in Memphis. The parties agree that at some time during the fall, Ms. O'Brien informed Mr. Hummel that FedEx required further documentation from Dr. Woodworth. Plaintiff contends that Ms. O'Brien represented that the company would correspond with the physician directly.

The parties dispute the nature, frequency, and timing of the events throughout the remainder of 1996. Plaintiff contends that he attempted to contact Ms. O'Brien by telephone on numerous occasions, leaving several voice mail messages. Plaintiff also contends that when Ms. O'Brien returned his phone calls, she did not do so promptly nor consistently. Plaintiff contends that Ms. O'Brien, on more than one occasion, discussed a particular position for which he would be qualified and gave a date by which he could start work. In particular, he identifies two occasions in December when Ms. O'Brien offered him a position. First, he maintains that she offered him a position, the nature of which is disputed, but rescinded the offer

on the day he was to begin employment. Second, Plaintiff maintains that Ms. O'Brien offered him another position to begin on December 23rd, but that he declined due to prearranged holiday travel. Defendant maintains that any placement Ms. O'Brien was attempting to arrange would have been temporary (a 90–day Temporary Return to Work assignment) and that Plaintiff's characterization of the offered position(s) does not describe any position actually available with FedEx.

On January 7, 1997, Dr. Woodworth submitted another letter stating that Mr. Hummel was now capable of standing for three and a half hours, had no lifting restrictions, and "really [had no] specific restrictions." On January 20, 1997, Dr. Woodworth completed a FedEx "physical capacities evaluation," and on February 26, 1997, Dr. Woodworth provided an additional letter to FedEx, both containing the same basic medical evaluation as that stated in his January 7, 1997 letter.

On March 7, 1997, Laura Moore of the Human Capital Management Division of FedEx sent an inter-office memorandum to Mr. Hummel, informing him that his medical leave of absence would expire on June 5, 1997. The memorandum stated in relevant part: "To date, I have not received any documentation of a release to return to work." The letter went on to explain the relevant policy and procedure:

> You have until the expiration of your leave on June 5, 1997 to seek a position for which you meet the minimum specifications and can perform the essential functions. You must provide medical documentation to support your ability to perform any position for which you apply. You will receive placement preference for any lateral or lower level position for which you successfully complete the selection process within the AGT & T division.

You may submit unlimited Job Change Applications for positions for which you qualify.

During this period, your situation will be referred to the Human Capital Management Committees for review and assistance in locating placement that is within your restrictions. Their efforts will run concurrent with your locating a position.

At the end of this period, if no position is located, your employment will be terminated In addition, Ms. Moore requested that Mr. Hummel return a copy of the letter with his signature to confirm its receipt and to indicate whether he was willing to relocate for employment. Mr. Hummel did not return a copy of the letter.

On April 8, 1997, Joni Thome, Mr. Hummel's newly-retained attorney, submitted a letter to Fred Smith, CEO of FedEx, outlining Mr. Hummel's employment with FedEx and the events of 1996 that involved his attempts to return to work. On April 18, 1997, Virginia E. Gandy, a senior attorney for FedEx, responded to Ms. Thome's letter, informing her that the matter had been referred by Mr. Smith to the legal department and was currently under investigation. On May 23, 1997, a FedEx paralegal sent an e-mail to Ms. O'Brien requesting information and stating, "[W]e sent a stall letter to him a few weeks ago to buy some time, but that has expired." Ms. Thome sent letters to Ms. Gandy on June 2 and 4, 1997, requesting a response with respect to Mr. Hummel's developing concerns related to health insurance coverage and also indicating that she had yet to hear from FedEx since the April 18th letter despite her telephone calls during the interim.

On June 11, 1997, Ms. Gandy telephoned Ms. Thome and offered to reinstate Mr. Hummel as a Heavyweight Handler on a four-hour evening shift. Ms. Thome communicated concern that Mr. Hummel's health would compromise his ability to fill the position. Ms. Gandy then sent a "Privileged and Confidential" e-mail on June 16, 1997, to a FedEx supervisor stating:

> Laura advised me that you have a part time ops agent job that you asked for but have not received approval. What is the status of this position? Are you planning on filling it soon?

> If so, I have an HCMP candidate who slipped through the cracks and we are looking for a way to resolve the situation. He would be ideal for this position and I'd like to offer it to him.

> Please let me know the status of this job, the hours, location, etc.... I appreciate your assistance.

On June 24, 1997, however, Ms. Gandy offered a Heavy Weight Handler position for a three and a half hour morning shift. She further advised that if Mr. Hummel did not respond to the offer by noon on June 26, 1997, or rejected the offer, then he would be terminated. On June 25, 1997, Ms. Gandy received a facsimile from Dr. R. Koller stating that Mr. Hummel was unable to stand for "over forty-five minutes." On June 26, 1997, Ms. Thome sent a letter to Ms. Gandy: (1) stating that, in no conversation, had she indicated Mr. Hummel's ability to stand for three and a half or four hours; (2) reiterating that a job had been offered to and rescinded from Mr. Hummel in December 1996; (3) alleging that FedEx had failed to accommodate Mr. Hummel's disability; and (4) requesting a complete job listing for the Twin Cities area.

On July 1, 1997, Ms. Gandy wrote to Ms. Thome informing her of an open secretarial position. Ms. Gandy advised that the position would constitute a promotion for Mr. Hummel, and therefore he would not receive preferential placement. If he was interested, however, Ms. Gandy was to be

informed by close of business on July 2, 1997, and the requisite typing test would be arranged. Ms. Gandy sent a second letter on July 2, 1997, acknowledging that Ms. Thome was on vacation and that she had been authorized by Ms. Thome's colleague to contact Mr. Hummel directly to arrange the typing test. On July 3, 1997, Ms. Moore, of Human Capital Management Operations, sent a letter overnight by FedEx to Mr. Hummel stating that she had left him a voice mail on July 2nd informing him of a July 3rd typing test for which he did not appear. In this same letter, Ms. Moore informed Mr. Hummel that a second and final typing test was arranged for the following Monday, July 7, 1997. After not appearing for the July 7th typing test, Mr. Hummel was terminated from his employment as stated in a letter from Ms. Moore, dated July 10, 1997.

Mr. Hummel filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on November 13, 1997.[2]

### Discussion

### A. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir.1996). However, as the Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Fed-

eral Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Fed. R.Civ.P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Krenik*, 47 F.3d at 957.

### B. Disability Discrimination

#### i. Timeliness

■ Defendant maintains and even attributes to the Plaintiff's position that, given Mr. Hummel's EEOC filing on November 13, 1997, the Court should calculate back 300 days to January 17, 1997, and disregard any conduct occurring before that date. As further support of this argument, Defendant contends that the August 12, 1996, letter from Dr. Woodson did not qualify as a medical release, and thus, FedEx's responsibilities under the ADA in the instant case had not yet attached. To the contrary, Plaintiffs contend that Dr. Woodson's letter did constitute a medical

**2.** Defendant has presented the Court with exhibits, such as excerpts from Mr. Hummel's diary and therapist notes, that speak to Mr. Hummel's state of mind in pursuing the current litigation. While the Court does not discount them as necessarily irrelevant to Fe-

dEx's defense, it finds them immaterial to the current motions, given the factual disputes that have been found to remain. Thus, they have not been referenced in the Court's recitation of the facts relevant to the current motions.

release and that all conduct after August 12, 1996, should be considered under the "continuing violation" theory.

The statute of limitations for a disability discrimination claim under the ADA is 300 days. *See* 42 U.S.C. §§ 12117 (1994) (incorporating 42 U.S.C. §§ 2000e–5). The continuing violations doctrine effectively tolls the statute of limitations in situations when a continuing pattern of discriminatory acts occurs over a period of time, as long as at least one incident of discrimination occurred within the limitations period. *Hukkanen v. Int'l Union of Operating Eng'rs, Hoisting & Portable Local No. 101,* 3 F.3d 281, 285 (8th Cir.1993). *See also Delaware State College v. Ricks,* 449 U.S. 250, 257–58, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). Defendant challenges the application of the doctrine to the instant case, however, arguing that there are three discrete time periods involved [ (1) August 12, 1996—January 7, 1997; (2) January 7, 1997—June 25, 1997; and (3) June 25, 1997—July 10, 1997], and thus no continuous pattern of discriminatory conduct. Defendant relies on *Treanor v. MCI Telecomms. Corp.,* 200 F.3d 570, 574 (8th Cir. 2000), and *Conner v. Reckitt & Colman, Inc.,* 84 F.3d 1100, 1102 (8th Cir.1996), as providing the purported parameters of the doctrine in the ADA context. The Court is not persuaded.

First, courts generally evaluate the appropriateness of applying the continuing violation doctrine in discrimination cases, regardless of their particular context, *i.e.,* race, sex, disability, etc. Thus, it is not only legitimate, but also helpful for a party to bring discrimination case law on this issue to the attention of the Court, regardless of the basis for the underlying discrimination. Second, the cases that Defendant cites as support for its contention that the time periods in the instant case are sufficiently discrete to preclude application of the doctrine are easily distinguishable. In *Conner,* the 8th Circuit held that alleged discrimination that was a consequence of a termination did not create a continuing pattern of discrimination, and in *Treanor,* the Circuit affirmed the non-application of the doctrine where the complaining employee had been reinstated to work twice with significant time lapses in between, *e.g.,* one year. While the significance of certain conduct remains in dispute, the basic progression agreed to by both parties in the instant case involves an employee's attempt to return to work over the course of several months, if not almost one year, with the final result being termination.

The Court finds that the continuing violation doctrine is appropriately applied in the instant case. To the extent that the parties disagree over the legal significance of certain conduct by both parties, such as whether the August 12th letter constitutes a medical release, genuine disputes of material fact continue to exist. However, the Court declines to avoid such determinations when they are clearly relevant and integral to the alleged pattern of discrimination in the instant case.

### ii. Prima Facie Case

In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the U.S. Supreme Court set forth a three-stage burden-shifting test that has been consistently applied in discrimination cases. *See Ryther v. KARE 11,* 108 F.3d 832, 836 (8th Cir.1997) (adopting *McDonnell Douglas* test as applied in *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).). The first stage requires that the plaintiff establish a *prima facie* case of discrimination. *Ryther,* 108 F.3d at 836. A *prima facie* case of disability discrimination requires proof that: (1) the plaintiff suffers from a disability that substantially limits a major

life activity; (2) he is qualified to perform the essential functions of the job, with or without accommodation; and (3) he has suffered an adverse employment action because of his disability. *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1111–12 (8th Cir.1995). If the plaintiff is successful, then the burden shifts to the defendant who is required to provide evidence of a valid, non-discriminatory reason for the alleged discriminatory conduct. *Id.* Should the defendant produce such evidence, then the burden shifts back to the plaintiff requiring him/her to prove intentional discrimination. *Id.* The plaintiff is not required to present new evidence at this stage. Instead, it is sufficient for the plaintiff to rely on the evidence presented to establish the *prima facie* case coupled with the claim that the defendant's reason is mere pretext. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146–48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

■ With respect to the first element, the parties agree and the Court finds that Mr. Hummel was "disabled" under the ADA during the time period relevant to the instant case. With respect to the second element, the parties purport to agree that Mr. Hummel was "qualified disabled" during this time period as well. However, as the Court discussed above in its analysis of timeliness, there appears to be a dispute as to what that time period should be and therefore what facts and conduct should be considered. Consequently, it is not clear to the Court that the parties truly agree on this issue.

The analysis of whether a plaintiff is "qualified disabled" has been established in the Eighth Circuit as follows:

The determination of qualification involves a two-fold inquiry: (1) whether the individual meets the necessary prerequisites for the job, such as education, experience, training, and the like; and (2) whether the individual can perform the essential job functions, with or without reasonable accommodation. Although the employee at all times retains the burden of persuading the trier of fact that he or she has been the victim of illegal disability discrimination, "once the plaintiff makes 'a facial showing' that reasonable accommodation is possible," the burden of production shifts to the employer to show that it is unable to accommodate the employee.

*Cravens v. Blue Cross & Blue Shield of Kansas City*, 214 F.3d 1011, 1016 (8th Cir.2000) (citations omitted). An employer is not required to create an entirely new position nor accommodate an employee to the extent that doing so imposes an undue hardship on the employer. *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 951 (8th Cir.1999) (citing 42 U.S.C. § 12112(b)(5)(A)). However, the *Fjellestad* court went on to cite certain regulations of the ADA and EEOC that help to define for employers a reasonable accommodation and the nature of the effort required to fashion such an accommodation. *Id.*

To determine the appropriate reasonable accommodation, it may be necessary for the employer to initiate an informal, interactive process with the employee with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(*o*)(3).

Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexi-

ble, interactive process that involves both the employer and the employee with a disability.

29 C.F.R. § 1630, App. § 1630.9.

Given that FedEx received varying medical correspondence from August 1996 through June 1997, the issues of qualification and accommodation, the legal effect of such correspondence and other communications, and ultimately the facts upon which such determinations should be based are not as limited as Defendant would have the Court believe. The Court has found that the continuing violation theory applies in the instant case, and therefore it will consider the alleged conduct stemming from August 1996. Defendant cannot limit the scope of Plaintiffs' claims to an approximate month-long interaction in 1997 between Ms. Gandy and Ms. Thorne, as it has tried to do, when the essence of Mr. Hummel's allegations is that FedEx discriminated against him in the months-long delay preceding the later interaction. It is only for this time period that Defendant apparently concedes that Plaintiff was qualified disabled. Curiously, however, Defendant still attempts to explain away the time lapse between August 1996 and spring 1997, by pointing to the busy holiday season, health problems, and family commitments of Ms. O'Brien as a drain on the energy and time she would have otherwise addressed to Mr. Hummel's requests. Moreover, the Court rejects Defendant's contention that the limited interaction between the two attorneys is clearly a good faith interaction, and it finds that a reasonable fact-finder could find to the contrary. Indeed, there remains a dispute as to whether a good faith interactive process was accomplished at any point after August 1996 and before June 1997, if and when such a responsibility attached.

The Court also finds that Plaintiffs have met their burden of making a facial showing that reasonable accommodation was possible. Plaintiffs have presented evidence that, from August 1996 through July 1997, there were numerous positions available in the Twin Cities area for which Mr. Hummel would have been qualified at either the same level as his previously held position of Heavy Weight Handler, or at a less physically demanding position such as Ramp Ops Agent or Service Agent. Indeed, FedEx Attorney Gandy's e-mail on June 16, 1997, regarding the potential Ramp Ops position would appear to support Plaintiffs' position. Plaintiffs have also presented evidence of job listings for like positions in locations to which Mr. Hummel would have to relocate. Defendant appears to contest such evidence by arguing: (1) that its duty to accommodate had not attached during 1996 and early 1997, thus rendering the earlier availability of "accommodating" positions irrelevant; (2) that once the duty had attached, such accommodations were unnecessary; and (3) that Mr. Hummel did not appropriately respond to FedEx's March 7, 1997, inquiry regarding his willingness to relocate, nor did he apply for positions as advised in that same letter. Again, without reaching the validity of Defendant's arguments as they may apply to spring 1997, and in light of the remaining disputes of fact already noted by the Court, the Court finds that Defendant has not sufficiently dispelled Plaintiff's facial showing of reasonable accommodation for the time period from August 1996 through July 1997.

■ With respect to the third element of Plaintiff's *prima facie* case, Defendant contends that Plaintiff has failed to establish either adverse employment action or that any alleged discriminatory conduct occurred because of Mr. Hummel's disability. Given the nature of Plaintiffs' claim as a failure to accommodate, the requisite analysis focuses on the second element as discussed above. Nonetheless, whether

the adverse employment action at issue is characterized as Defendant's alleged failure to accommodate or Plaintiff's ultimate termination,[3] there is significant overlap with the second element discussed above, and thus, the same factual disputes remain. Defendant's contention that Plaintiff has not established that any of the alleged discrimination has occurred "because of" his disability is unconvincing. While Defendant provides reasonable explanations for the delay in offering Mr. Hummel an opportunity to return to work, it is the very explanations that Plaintiffs dispute, and the Court finds that a reasonable fact-finder could determine such explanations to be pretextual.

In conclusion, the Court finds that significant factual disputes remain with respect to whether Defendant FedEx met its obligation to provide a reasonable accommodation so that Mr. Hummel could return to work, and in doing so engaged in a flexible, interactive process with its employee, such that its responsibilities under the ADA were satisfied. For the reasons stated, **LET IT BE ORDERED** THAT:

1. Plaintiffs' Motion for Summary Judgment (Doc. No. 64) is **DENIED**; and

2. Defendant's Motion for Summary Judgment (Doc. Nos. 56 & 57) is **DENIED**.

---

[3]. Plaintiff Hummel has also raised a claim of retaliation in his complaint in intervention. Such a claim could constitute adverse employment action for purposes of establishing a *prima facie* case. As the Court has previously noted, however, Plaintiff's retaliation claim is not addressed by the Court's current order.