Sharon JOELSON, Plaintiff,

v.

**DEPARTMENT OF VETERANS AF-FAIRS; Anthony Principi, Secretary of Veterans Affairs, Defendant.**

No. A3–99–135.

United States District Court,
D. North Dakota,
Southeastern Division.

Oct. 24, 2001.

Dennis D. Fisher, Stefanson, Plambeck, Foss & Fisher, Moorhead, MN, for Sharon Joelson.

Lynn E. Crooks, U.S. Attorney's Office, Fargo, ND, for United States Department of Veterans Affairs, Togo D. West, Jr.

### MEMORANDUM AND ORDER

WEBB, Chief Judge.

## I. Introduction

Before the Court is defendant's motion for summary judgment (doc. # 47). Plaintiff resists the motion (doc. # 50). For the reasons set forth below, defendant's motion is **GRANTED**.

## II. Background

Plaintiff was a registered nurse at the Veterans Administration Hospital ("VA") in Fargo, North Dakota. In 1988, she injured her back on the job. As a result, she missed a good deal of work, and when she recovered she did not return to her prior job on the wards. Rather, upon her return in 1990, she was assigned to do clinical reviews on the Quality Management Team ("QM"). She challenged a proficiency review given her in this position, leading to litigation in this Court. *Joelson v. Brown*, civil no. A3-94-48 (filed April 21, 1994). In 1995, this Court disposed that litigation by summary judg-

ment. *Id.* (summary judgment October 11, 1995).

On March 17, 1995, while plaintiff was doing QM, Directive 10–95–0274 was issued by the head of the VA in Washington. (Def.Ex. 1.) This directive limited placing "Title 38 personnel," trained clinical health providers such as plaintiff, in non-patient-care duties, such as the QM team. In response to this directive, the head of the Fargo VA on April 7, 1995 indicated he would remove four Title 38 registered nurses, of whom plaintiff was one, from the QM teams. (Def.Ex. 2.) He planned to place plaintiff onto a telephone triage team, which would "continue to accommodate her physical restrictions." (*Id.*) This plan was apparently agreeable to plaintiff, although she seems to dispute whether the directive in fact required such a transfer at all.

However, on April 10, 1995, a union at the VA objected to plaintiff's transfer, arguing the position should be opened to bids per the usual procedure. (Def.Ex. 3.) Therefore, the transfer was placed on hold, and it was ultimately determined that the regular union procedures would be used to fill the position. (Def. Ex's 4, 6, 7.) Plaintiff now disputes whether the union's position, and the VA's ultimate conclusions, were required by the collective bargaining agreement then in place.

On May 11, 1995, plaintiff was ordered to return to nursing service in the Intensive Care Unit (ICU). (Def.Ex. 9.) On June 9, she objected to this transfer, arguing it placed her at risk of reinjury. (Def.Ex. 11.) Ultimately, job restrictions imposed by plaintiff's treating physician, which limited her ability to lift and perform other physical tasks, became part of her job description. (Def. Ex.'s 12, 13.) Nevertheless, in August 1995, plaintiff reinjured her back while working. The parties dispute whether the injury was caused by a violation of the work restric-

tions, and the Court makes no conclusion in this regard. The Court notes, however, that plaintiff received Federal Employee Compensation Act benefits as a result of this injury, over the objection of the VA. (Pl.Ex. C.)

After recovering, plaintiff returned to work in the ICU. However, she evidently struggled in that setting. On December 12, 1995, her doctor wrote the VA concerning plaintiff's panic attacks and anxiety; the letter asked that she be given several days off to "interrupt the deteriorating pattern." (Def.Ex. 16.) The VA replied on December 21 with a letter asking plaintiff to have a medical examination about these concerns. (Def. Ex 17.) She ultimately saw her own physicians in February 1996, and the VA got her records in March 1996. (Def. Ex.'s 18–20.)

On March 1, 1996, the VA asked a Dr. Ronald Johnson to determine, on the basis of these materials, plaintiff's fitness for a return to work. (Def.Ex. 20.) Dr. Johnson issued his report on March 28. (Def.Ex. 21.) In it, he concluded that plaintiff "is incapable of functioning in any capacity in any kind of direct patient care setting, due to her severe lower back disability, and Anxiety and Panic Disorder." (*Id.*)

On May 13, 1996, in response to this report, the VA convened a Physical Standards Board charged with the task of reviewing whether plaintiff could perform her job and to recommend "remedial treatment or separation from service." (Def.Ex. 23.) Plaintiff was informed of this Board and was allowed to present evidence. (Def.Ex. 24.) On July 2, the Board signed a report indicating plaintiff was not capable of performing the duties of an RN and would not be able to do so. (Def.Ex. 25.) Plaintiff was informed of this decision on July 5. (Def.Ex. 23.) Plaintiff then declined non-nursing posi-

tions and applied for and received disability retirement on February 2, 1997, retroactive to August 9, 1996. She has not worked at the VA since. She has now sued the VA, alleging discrimination and retaliation under the Rehabilitation Act, and the VA has moved for summary judgment.

## III. Analysis

### A. Summary judgment standard

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is "material" if it might affect the outcome of a case, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Churchill Bus. Credit, Inc. v. Pacific Mut. Door Co.*, 49 F.3d 1334, 1336 (8th Cir.1995).

The inquiry for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." However, the nonmovant must do more than merely restate earlier pleadings. *See McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 510 (8th Cir.1995). Mere arguments or allegations are insufficient to defeat summary judgment; the nonmovant must advance specific facts to create a genuine issue of material fact for trial. *See, e.g., F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir.1997). This requirement is not satisfied by "speculation, conjecture, or fantasy"; it requires sufficient probative evidence to allow a finding in its favor, assuming the evidence is established at trial. *See Wilson v. International Business Machines Corp.*, 62 F.3d 237, 241 (8th Cir.1995).

### B. Discussion

Plaintiff advances two main claims. The first claim is that her assignment to direct nursing in the ICU, and subsequent firing when she could not perform this job, violated the Rehabilitation Act. Plaintiff's second claim is that she was retaliated against in violation of the Rehabilitation Act. The Court will address each in turn.

### 1. Rehabilitation Act claim

The Rehabilitation Act, though it preceded the ADA, is now largely overshadowed by the ADA, and courts explicitly employ ADA rules and principles for analysis of Rehabilitation Act cases. *See Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir.1999) (noting that cases interpreting both acts are "interchangeable"). However, the ADA does not apply to federal employers, 42 U.S.C. sec. 12111(5)(B)(I), while the Rehabilitation Act does, 29 U.S.C. sec 794, making it the Act at issue here.

Analysis of Rehabilitation Act cases requires use of the famous *McDonnell–Douglas* burden-shifting framework. *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994). Under this framework, a plaintiff must make out a prima facie case by showing that (1) she is disabled within the meaning of the statute; (2) she is able to perform the essential functions of the job with or without reasonable accommodation; and (3) she has suffered an adverse employment action as a result of the disability. *Id.; see also Treanor v. MCI Telecommunications Corp.*, 200 F.3d 570, 574 (8th Cir.2000). The burden then shifts to the defendant to offer a legitimate, nondiscriminatory reason for the employment action. *Treanor*, 200 F.3d at 574. Finally, the plaintiff retains the ultimate burden of proving the employer's reason is a pretext for discrimination. *Id.* The Court here

concludes that plaintiff cannot make out her prima facie case.

Defendant concedes plaintiff is disabled under the Rehabilitation Act, and the Court agrees. It is also apparent she has suffered adverse work consequences—loss of employment. *See Cooney v. Union Pacific R.R.*, 258 F.3d 731, 734 (8th Cir.2001) (holding termination is an adverse work consequence). The question is whether she is capable of performing the essential functions of the job, with or without reasonable accommodation. *See Treanor*, 200 F.3d at 574. The Court concludes she is not.

■ First, the record is not disputed as to what plaintiff is and is not capable of doing. There is nothing in the file contradicting Dr. Johnson's finding, and plaintiff does not dispute it, that she cannot function in a direct patient care setting. (Def.Ex. 21.) In fact, plaintiff's complaint recognizes that her own physicians urged her not to work in such a setting. (Compl. at ¶ 10.) Further, she does not argue this point in her papers, instead focusing on her ability to perform non-direct care positions, a point discussed below. Therefore, the Court will proceed on the basis of the undisputed point that plaintiff is not qualified to perform any direct patient care positions.

The question then becomes whether, given this restriction, she could perform the essential duties of the job, with or without reasonable accommodation. Notably, plaintiff does not suggest that an accommodation would have allowed her to perform a direct patient care job. Rather, she argues she was able to perform other jobs, and the VA was obligated to transfer her to such a job as a reasonable accommodation. There are several problems with this theory.

First, the issue of "the job" must be examined. Plaintiff urges that the starting point job is her old one on QM, which everyone agrees she could do; she argues that the ICU position was a temporary one. Defendant urges that the job at issue is the ICU job, or a similar direct patient care nursing job. While it will elaborate further of the issue of transfer below, the Court agrees with defendant. The QM positions were eliminated for nurses such as plaintiff; three others were also moved to the wards. The file supports defendant's contention that these jobs were simply eliminated according to the national directive. The Physical Standards Board and Dr. Johnson evaluated plaintiff in light of her ability to perform the ICU job. Thus, plaintiff's contention that she should be evaluated in light of the QM job is flawed and must be rejected.

■■ Given that plaintiff could under no circumstances perform a direct patient care job, the question becomes whether defendant had a duty to transfer her to a different job, as plaintiff urges. Transfer can be a reasonable accommodation under some circumstances. *Cravens v. Blue Cross and Blue Shield of Kansas City*, 214 F.3d 1011 (8th Cir.2000). However, the *Cravens* court recognizes that transfer as a reasonable accommodation is severely restricted by a number of factors. *Id.* at 1019. Summarized as a list, these restrictions include:

(1) Reassignment is the accommodation of last resort;

(2) An employer is not required to create a new position as an accommodation;

(3) The existing position must be vacant, and an employer is not required to bump another employee;

(4) Promotion is not required; rather, a demotion is permissible if it satisfies the other requirements;

(5) An employer is not obligated to provide the accommodation requested or preferred by the employee;

(6) The employee must be otherwise "qualified" for the reassignment position;

(7) Reassignment is not required if it would violate a nondiscriminatory policy of the employer or the rights of others under a collective bargaining agreement; and

(8) Reassignment must not create an "undue hardship" on the employer.

*Id.* at 1019–20. Thus, plaintiff must point to an existing, vacant position for which she was qualified, whether or not it is in the same salary/benefit grade, and to which her assignment would not affect the VA's legitimate policies or disrupt its collective bargaining agreements. *Id.* She has failed to do so.

In an affidavit accompanying her motion papers, plaintiff points to two such positions. The first is the telephone triage position to which she was initially transferred after being moved off the QM team. However, it is apparent that the union objected to this transfer, and the VA acquiesced to the union's proposal for filling the position. Thus, the position does not satisfy one of the *Cravens* criteria, in that it would require the employer to violate a collective bargaining agreement. *Cravens,* 214 F.3d at 1019–20 (listing limits on transfer as a reasonable accommodation). Though plaintiff argues that the union's position was not mandated by the collective bargaining agreement, the Court is unwilling to review a general internal decision made almost six years ago on the basis of this bald assertion.

The second position she identifies is the "Primary Care Initiative" program development coordinator, a job she did after leaving the QM team. However, the record supports the conclusion that this position does not meet the *Cravens* criteria. According to affidavits submitted by the defendant, the job simply does not exist; the VA has no such position. In fact, it

never did; plaintiff's work in it were part of her QM duties, which she lost when the QM teams were changed. *Cravens* requires that the job to which plaintiff seeks transfer be an existing one; plaintiff cannot meet this criteria. *Id.*

In sum, plaintiff has not met her burden of presenting a prima facie case under the Rehabilitation Act. Essentially, she has not shown she is capable of performing, with or without reasonable accommodation, the duties of any available jobs. Therefore, the motion for summary judgment on her Rehabilitation Act claim is **GRANTED**.

### 2. Retaliation claim

 As a general matter, retaliation is actionable under the Rehabilitation Act. Such a claim has the following elements:

> A prima facie case of retaliation consists of three elements: (i) protected activity, (ii) adverse action taken by the employer against the employee, and (iii) a causal link between the two. Proof of an adverse employment action requires a "tangible change in duties or working conditions that constitute[ ] a material employment disadvantage."

*Cossette v. Minnesota Power & Light,* 188 F.3d 964, 972 (8th Cir.1999) (citations omitted) (analyzing ADA case, which uses the same standards). Here, it is somewhat unclear what plaintiff posits to fulfill these elements. Apparently, she originally based this claim on her investigation into a suspicious patient death at the VA. However, she now concedes that such a claim must be made pursuant to the Whistleblower Act, 5 U.S.C. sec. 2302(b)(8), the administrative remedies for which have not been exhausted. Thus, the basis of the claim must lie elsewhere.

Unfortunately, neither her complaint nor her motion papers help the Court much in this regard. The only retaliation listed in the complaint is the patient death

issue, with which the Court has already dealt. Her motion papers state only that "the other retaliation claims are subject to factual determinations on the good faith of the VA." However, she does not explain what those "other retaliation claims" are, let alone the protected activity in which she engaged and any attempt at showing causation between this activity and the retaliation. Nor does her affidavit attempt any such explanation. In the complete absence of any suggestions of facts, let alone proof, that fit the requirements of a retaliation claim, the Court must reject the claim. Therefore, defendant's motion for summary judgment on the retaliation claim in **GRANTED**.

## IV. Conclusion

For the reasons set forth above, defendant's motion for summary judgment (doc. # 47) is **GRANTED**.

**IT IS SO ORDERED.**