United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-1693

_____

| | | |
|---|---|---|
| Ronnie Layes, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Mead Corporation; CNA Insurance | * | |
| Company; Mead Retirement Plan; | * | |
| Mead Benefit Programs, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: November 19, 1997

Filed: January 5, 1998

_____

Before McMILLIAN and WOLLMAN, Circuit Judge, and STEVENS,[1] District Judge.

_____

WOLLMAN, Circuit Judge.

Ronnie Layes (Layes) initiated this Employment Retirement Income Security Act (ERISA) action alleging that he was wrongfully denied long-term disability benefits

_____

[1]The HONORABLE JOSEPH E. STEVENS, United States District Judge for the Western District of Missouri, sitting by designation.

and salary continuation benefits under his employer's ERISA plan. The district court[2] granted summary judgment in favor of defendants Mead Corporation, Mead Retirement Plan, and Mead Benefits Program (collectively referred to as "Mead"), and CNA Insurance Companies (CNA). Layes now brings this timely appeal pursuant to 28 U.S.C. § 1291 (1993). We affirm.

# I.

Layes began working for Mead in April of 1987 as a supervisor at Mead's containerboard plant in Fort Smith, Arkansas. During the summer of 1992, Layes began experiencing pain in his legs and feet. He was referred to Dr. James Long, an orthopaedic surgeon. Dr. Long concluded that Layes suffered from chronic foot and leg pain caused by a developmental misalignment of the lower extremities.[3] This condition was aggravated by the prolonged periods of walking and standing that were a part of Layes' job.

Dr. Long performed minor surgery on Layes in an attempt to alleviate some of his symptoms. Layes' condition failed to improve, however, and sometime in December 1992 Layes orally notified Mead's Fort Smith plant manager that he intended to take "disability retirement" and would cease working in February 1993.

---

[2]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

[3]Dr. Long's precise diagnosis was "symptomatic genu varum and pes cavus with calcaneoravus." "Genu varum" is defined as "a deformity marked by medial angulation of the leg in relation to the thigh; an outward bowing of the legs." Stedman's Medical Dictionary 714-15 (26th ed. 1995). "Pes cavus" or "talipes cavus" refers to "an exaggeration of the normal arch of the foot." Id. at 1760. "Calcaneovarus" occurs where "the foot is dorsiflexed, inverted, and adducted." Id.

Aside from his communications to the plant manager, Layes took no other action toward pursuing disability benefits at this time.

In January 1993, Dr. Long wrote to Mead to confirm Layes' diagnosis and to express his opinion about the physical limitations that accompanied Layes' condition. Dr. Long stated that excessive walking and standing significantly contributed to the severity of Layes' symptoms. In February, Mead requested further information from Dr. Long. In addition, Mead expressed a desire to accommodate Layes' medical needs so that he might continue working at the Fort Smith plant. Subsequent communications between Mead representatives and Dr. Long led Mead to inquire about the possibility of providing Layes with a motorized cart that would enable him to remain seated while performing most of his supervisory duties.[4] Dr. Long expressed his opinion that such an accommodation might allow Layes to continue working at the Fort Smith plant.[5]

In April 1993, Mead informed Layes of its willingness to provide him with a motorized cart in order to accommodate his medical needs and requested that Layes return to work under these conditions. Layes, who by this time had been away from work for nearly two months, failed to respond to Mead's offer. In May of 1993, Layes informed CNA, the administrator of Mead's long-term disability benefits plan, of his intent to seek long-term disability benefits. Shortly thereafter, he was provided with a claims form used by Mead employees seeking benefits under the terms of the plan. Layes subsequently filed a formal request for long-term disability benefits in June 1993.

---

[4]Dr. Long informed Mead that the only accommodation that might enable Layes to continue working would be to ensure that he could remain seated at least 75 percent of the time. The motorized cart proposal was designed to meet this requirement.

[5]In a letter dated March 26, 1993, Dr. Long stated that "the use of a motorized cart decreasing the amount of time that this patient has to stand and walk may well affect his symptoms and thereby allow him to continue at his present job" and "should be of considerable benefit."

Mead's long-term disability benefits plan provides for the payment of benefits for 24 months so long as the applicant is "continuously unable to perform the substantial and material duties of [his] regular occupation." Beyond that time frame, disability benefits are payable to any individual who is "continuously unable to engage in any occupation." In November of 1993, CNA, acting as the administrator of the plan, determined that Layes was not totally disabled under the terms of the plan and was therefore not entitled to long-term disability benefits. CNA notified Layes of its decision to deny the requested benefits in November 1993. In addition, CNA apprised Layes of his right to request review by CNA's appeals committee within sixty days and advised him that any request for appeal "should explain why you are in disagreement with our decision" and should also "include supporting documentation and/or objective medical information which you feel would alter our decision." Layes made a timely request for appeal of CNA's initial decision. He included no additional documentation, however, and cited Dr. Long's letter of January 22, 1993, as his sole basis for objecting to CNA's decision.[6] In January 1994, CNA's appeals committee denied Layes' request for benefits.

Layes thereafter filed this ERISA action pursuant to 29 U.S.C. § 1332(1)(B) (1985 & 1997 Supp.) seeking to recover long-term disability benefits allegedly due from CNA and Mead. In addition, Layes sought salary continuation benefits allegedly due from Mead.

## II.

We first address Layes' contention that the district court erred in granting summary judgment in favor of CNA and Mead on Layes' long-term disability claim.

---

[6]In his January 22 letter, Dr. Long informed Mead that Layes could not perform the extensive walking and standing associated with his work but that he "might be able to function if his job allowed him to sit most all the time."

"We review a district court's grant of summary judgment de novo, viewing the record in the light most favorable to the non-moving party." Wald v. Southwestern Bell Corp. Customcare Medical Plan, 83 F.3d 1002, 1006 (8th Cir. 1996).

With regard to Layes' claim for long-term disability benefits, the district court properly granted summary judgment in favor of Mead. CNA was at all relevant times the sole administrator of the long-term disability plan offered by Mead. Thus, Mead was not a proper party defendant. See Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997) ("The proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan"). See also Daniel v. Eaton Corp., 839 F.2d 263, 266 (6th Cir. 1988) ("Unless an employer is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits"). Layes argues that a series of communications between Mead's corporate counsel and CNA reveal an attempt by Mead to improperly exert its influence over the handling of Layes' claim, thus rendering Mead the administrator of the plan. For the most part, these communications occurred prior to Layes' filing of a claim, and in any event they do not establish that Mead influenced CNA's decision on Layes' disability claim.[7]

### III.

We turn, then, to Layes' action against CNA for long-term disability benefits. The district court reviewed CNA's decision to deny benefits for an abuse of discretion. Layes maintains that the court should have reviewed CNA's decision de novo.

---

[7]The letters, memos, and other correspondence that Layes considers demonstrative of Mead's control over the administration of his claim occurred primarily in May 1993. Layes did not file a formal request for benefits until June 1993. He accuses CNA of unreasonably failing to provide him with a claim form. This claim is meritless. Layes first informed CNA of his desire to seek benefits on May 6, 1993, and he was sent a claim form on May 25, 1993.

Generally, where a benefits plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," we review the plan administrator's decision for abuse of discretion. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). See also Wald, 83 F.3d at 1006; Donaho v. FMC Corp., 74 F.3d 894, 898 (8th Cir. 1996); Collins v. Central States, S.E. & S.W. Areas Health & Welfare Fund, 18 F.3d 556, 559 (8th Cir. 1996); Cox v. Mid-America Dairymen, Inc., 13 F.3d 272, 274 (8th Cir. 1991). This deferential standard reflects our general hesitancy to interfere with the administration of a benefits plan. See Cox, 13 F. 3d at 274 (citing Buneman v. Central States, S.E. & S.W. Areas Pension Fund, 572 F.2d 1208, 1209 (8th Cir. 1978)). Layes does not dispute that the language of the plan grants CNA discretionary authority to administer and interpret the long-term disability plan. He nevertheless argues that the existence of procedural irregularities in the claims process mandates our application of de novo review rather than the deferential abuse of discretion standard. For this proposition, he relies upon Buttram v. Central States, S.E. & S.W. Areas Health & Welfare Fund, 76 F.3d 896, 899-900 (8th Cir. 1996).

We disagree with Layes' contention that Buttram requires us to conduct a de novo review in this case. In Buttram, we contemplated the application of a less stringent standard of review in situations involving substantial procedural irregularities. We did not suggest, however, that a de novo standard was appropriate. See id. Indeed, we held that "[i]n certain situations, factors external to the actual decision on the merits can mandate the application of a less deferential abuse of discretion standard." Id. at 899. Thus, even assuming that some form of heightened review is appropriate, the standard is not de novo.[8]

---

[8]In Armstrong v. Aetna Life Insurance Co., No. 97-1712, 1997 WL702914 (8th Cir. Nov. 13, 1997), we indicated that de novo review of a plan administrator's decision is required in those cases in which the plan administrator is also the insurer. See id. at 5. Layes does not make this argument, but instead relies upon the "procedural irregularities" approach. Although not entirely clear, the record indicates that CNA is both the insurer and the plan administrator. We need not resolve this question, however, in part because Layes has not raised the issue, and in part because we believe that CNA's decision is so clearly supported by the evidence before it that

We conclude that no form of heightened review is appropriate in this case. We apply heightened review only where the beneficiary can show (1) that a serious procedural irregularity existed; and (2) that the irregularity caused a serious breach of the plan trustee's fiduciary duty to the plan beneficiary. See id. at 900. The mere assertion of an apparent irregularity, without more, is insufficient to give rise to heightened review. See id. at 901. A beneficiary must show that the irregularities are connected to the actual decision reached; that is, that they caused "the actual decision to be a breach of the plan trustee's fiduciary obligations." Id. Unless a beneficiary can offer material, probative evidence that gives rise to "serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim," we will apply the traditional abuse of discretion standard to discretionary trustee decisions. Id. at 900.

Layes has presented no evidence illustrating that the processing of his claim was marred by serious procedural irregularities. The irregularities he cites consist primarily of correspondence between Mead's corporate counsel and CNA during May of 1993.[9] Although Layes draws sinister implications from these communications, as noted above this correspondence largely predated the processing of Layes' claim.

---

it would survive de novo review.

[9]Additionally, Layes makes vague assertions that he was not properly apprised of his rights and duties in filing for benefits under the long-term disability plan. However, the record shows that Layes had ample opportunity to submit additional evidence in support of his claim and simply failed to do so. Indeed, CNA requested additional information from Layes and received no response. Thus, Layes' assertion that he was not afforded a fair opportunity to demonstrate the validity of his claim is without merit.

Layes argues that the claims process began months earlier, when he first notified Mead's Fort Smith plant manager of his intent to seek disability benefits. The processing of Layes' claim did not begin, however, until he filed a formal request with CNA for long-term disability benefits. To hold otherwise would be to ignore the clear procedural requirements for seeking benefits under the plan. Furthermore, even assuming, arguendo, that the alleged procedural irregularities occurred during the processing of Layes' claim, the abuse of discretion standard is nonetheless proper. Layes offers no evidence tending to show that the alleged irregularities caused a serious breach of CNA's fiduciary duties. In fact, he does not demonstrate that they affected CNA's decision whatsoever. Any alleged irregularities were not so egregious that they might trigger a "total lack of faith in the integrity of the decision making process." See Buttram, 76 F.3d at 900.

## IV.

Turning to the merits of Layes' claim against CNA, and viewing the record in the light most favorable to Layes, we conclude that CNA did not abuse its discretion as plan administrator and that summary judgment was proper. See Wald, 83 F.3d at 1006.

Under the abuse of discretion standard, the reviewing court should consider only evidence that was before the plan administrator when the claim was denied. See Ravenscraft v. Hy-Vee Employee Benefit Plan & Trust, 85 F.3d 398, 402 (8th Cir. 1996); Oldenburger v. Central States, S.E. & S.W. Areas Teamster Pension Fund, 934 F.2d 171, 174 (8th Cir. 1991); Short v. Central States, S.E. & S.W. Areas Pension Fund, 729 F.2d 567, 571-72 (8th Cir. 1984). Layes submitted no evidence to CNA in support of his claim that he was totally disabled. Layes chose instead to rely exclusively on letters written by Dr. Long to Mead. Although Dr. Long stated that Layes could not continue to perform the extensive walking and standing associated with his position, he also stated that Layes "might be able to function if his job allowed him

to sit down most all the time." When Mead inquired of Dr. Long about the possibility of using a motorized cart to accommodate Layes' medical needs, Dr. Long stated that this "may well affect his symptoms and thereby allow him to continue at his present job." Rather than indicating that Layes was totally disabled, then, Long's letters indicate that Layes was still able to work.

Furthermore, an independent rehabilitation analyst consulted by CNA concluded that the cart was a feasible accommodation at the Fort Smith plant. Layes never responded to Mead's offer to provide a cart and submitted no evidence indicating that he could not continue working if the cart was utilized. He now asserts that the cart is neither feasible nor safe and that CNA is using the cart as a belated attempt to justify its improper denial of benefits. The record reveals, however, that Layes was aware of the offered accommodation before he ever submitted a claim to CNA. In addition, he was aware that his own treating physician was of the opinion that the accommodation would be of "considerable benefit" to him and would allow him to continue working.

Layes also asserts that CNA should have ordered an independent medical examination. The medical opinion relied upon by CNA, however, was that of Layes' own treating physician. This was the very opinion relied upon exclusively by Layes in submitting his claim. CNA was not obligated to seek independent medical examination when the medical evidence relied upon by Layes was on its face insufficient to support a conclusion that he was totally disabled. Thus, the evidence submitted by Layes does not support his contention that he is entitled to benefits, and the district court did not err in entering summary judgment against Layes.

## V.

Finally, we address Layes' contention that the district court erred in granting summary judgment in favor of Mead on his salary continuation benefit claim.[10] The

---

[10]The salary continuation plan is self-administered by Mead.

terms of Mead's salary continuation plan provide that the right to salary continuation benefits expires upon the termination of the employment relationship. Layes admits that his employment at Mead ended in February of 1993. He had made no attempt to apply for salary continuation benefits before that time, nor had he done so much as to request an application form for those benefits. Where a claimant fails to pursue and exhaust administrative remedies that are clearly required under a particular ERISA plan, his claim for relief is barred. See Conley v. Pitney Bowes, 34 F.3d 714, 716 (8th Cir. 1994) ("We have required exhaustion in ERISA cases only when it was required by the particular plan involved"). Accordingly, we find that the district court's grant of summary judgment in favor of Mead was proper.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.