# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1294

_____

| | | |
|---|---|---|
| Lynn M. Heaser, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| The Toro Company; Toro STD Claims | * | District of Minnesota. |
| Management Plan, a Self-Insured | * | |
| Employee Benefits Plan; Hartford Life | * | |
| and Accident Insurance Company, a | * | |
| Connecticut corporation, as Case | * | |
| Manager of the Toro STD Claims | * | |
| Management Plan, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: October 18, 2000

Filed: April 26, 2001

_____

Before WOLLMAN, Chief Judge, LAY, and BEAM, Circuit Judges.

_____

WOLLMAN, Chief Judge.

Lynn M. Heaser appeals from the district court's[1] grant of summary judgment on her employment discrimination claims under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213, and the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363.01-363.15, in favor of her former employer, Toro Company, Inc. (Toro), and on her claims under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461, in favor of Toro and the Toro STD Claims Management Plan (Toro Plan). We affirm.

## I.

We recite the facts in the light most favorable to Heaser. In 1990, Heaser began working as an administrative secretary at Toro's facility on Lyndale Avenue (Lyndale facility) in Bloomington, Minnesota. In 1993, she was promoted to the position of marketing services coordinator, which she held until her termination on March 14, 1997. As marketing services coordinator, Heaser ensured that Toro dealers and distributors received marketing materials in a timely fashion. To do so, she took orders for materials by phone and in person and processed the information on carbonless paper forms and by computer. She also maintained the historical files of various marketing materials and created literature racks of promotional literature.

In 1991, Heaser developed health problems, which increased in severity during her employment with Toro and resulted in various medical diagnoses, including petrochemical sensitivity, fibromyalgia, allergies, and multiple chemical sensitivities. Heaser suspected that her health problems were connected to air quality at the Lyndale facility and alerted Toro's management officials to her concerns.

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

In May of 1996, Heaser informed her supervisor that she was having trouble remaining at work for entire days because of illness. Her supervisor inquired of the human resources department whether working at home would be an option for Heaser and was told that although Toro did not have a work-at-home policy, some employees had been permitted to do so for short periods. Heaser's supervisor relayed the information to Heaser and told her that, temporarily, she could leave the Lyndale facility when she was too sick to remain at work, an option that Heaser exercised for three months. Although no performance deficiencies were noted during that time period, Heaser admitted that she was not fully performing her job. In an attempt to accommodate Heaser's health concerns, Toro moved her to a different office, but this action failed to alleviate Heaser's difficulties. Heaser sought medical assistance from several different physicians during 1996 and ultimately took a medical leave of absence from Toro. From September to December of 1996, Heaser received four months of short-term disability benefits from the Toro Plan.

On December 31, 1996, after receiving notice that her short-term disability benefits were being terminated, Heaser requested that she be allowed to work from her home. On January 28, 1997, Toro denied this request, but offered to move Heaser to a different location within the Lyndale facility. Heaser responded that the change in location would not accommodate her needs but that she would be willing to discuss further possible changes, including the removal of the air freshener system from one of the women's bathrooms, the use of non-toxic cleaning solutions in her work area, and the installation of an air purifier in a separate office for her. Heaser also stated that she was concerned about handling the carbonless paper used for orders. On March 6, 1997, Heaser met with her supervisor, the manager of employee relations, and Dale Irvin, Toro's director of human resources and facility operations, who indicated that Toro would be willing to remove the freshener from one of the bathrooms and encourage the use of non-toxic cleaning solutions, but expressed concern that Heaser would remain unable to perform the job. Heaser stated that she would like to "give it

a try," and Irvin requested that Heaser provide a letter from her doctor stating that she was fit to return to work. On March 13, 1997, Toro received from Dr. Michael Dole, one of Heaser's treating physicians, a March 3 letter stating that "unless [Heaser] is able to avoid plastics, carbonless paper, copiers and their fumes, exhaust fumes, other personnel who may be wearing perfumes, colognes, etc., it is very difficult to succeed in gainful employment." Immediately thereafter, Toro terminated Heaser.

Heaser subsequently filed suit in district court, alleging disability discrimination under federal and state laws and seeking judicial review of Toro's denial of her short-term disability benefits. Heaser argues that the district court erred when it granted summary judgment in Toro's favor because she would have been able to perform her job with reasonable accommodation and because Toro failed to meet its obligation to engage in an interactive process with Heaser. Heaser also contends that the court erred when it dismissed her ERISA claims.

We review the district court's grant of summary judgment de novo. Henerey v. City of St. Charles, 200 F.3d 1128, 1131 (8th Cir. 1999). Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c). "[S]ummary judgment should seldom be granted in discrimination cases." Bassett v. City of Minneapolis, 211 F.3d 1097, 1099 (8th Cir. 2000).

## II.  Disability Discrimination[2]

The ADA affords protection from discrimination to any "qualified individual with a disability."  42 U.S.C. § 12112(a).  To establish a prima facie case of discrimination under the ADA, Heaser must show (1) that she has a disability within the meaning of the ADA, (2) that she is qualified to perform the essential functions of her job, with or without reasonable accommodation, and (3) that she suffered an adverse employment action because of her disability.  Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1135 (8th Cir. 1999) (en banc).  Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]."  42 U.S.C. § 12112 (b)(5)(A).  The proof necessary for discrimination cases is flexible and varies with the specific facts of each case. Young v. Warner-Jenkinson Co., Inc., 152 F.3d 1018, 1022 (8th Cir. 1998).

For the purposes of this appeal, Toro does not dispute that Heaser is disabled within the meaning of the ADA, and Heaser concedes that she is not qualified to perform the marketing services coordinator job without reasonable accommodation. The question presented, then, is whether Heaser has shown that she is a qualified individual within the meaning of the ADA because she can perform the essential functions of her job with a reasonable accommodation.

To be a qualified individual within the meaning of the ADA, Heaser must (1) possess the requisite skill, education, experience, and training for her position; and (2)

---

[2]We have noted that the MHRA parallels the ADA, Wilking v. County of Ramsey, 153 F.3d 869, 872 (8th Cir. 1998), and neither party contests the district court's treatment of Heaser's MHRA claims as co-extensive with her ADA claims.

be able to perform the essential job functions, with or without reasonable accommodation. Moritz v. Frontier Airlines, Inc., 147 F.3d 784, 786-87 (8th Cir. 1998). Only the second part of the definition is in question in this case. Although an ADA plaintiff retains the ultimate burden of proving that she is a qualified individual, an employer who disputes the plaintiff's claim that she can perform the essential functions of a job must put forth evidence establishing those functions. Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1113 (8th Cir. 1995). An essential function may be established by evidence that includes:

> (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the current work experience of incumbents in similar jobs.

Moritz, 147 F.3d at 787 (internal quotation marks omitted). A plaintiff need only make a facial showing that a reasonable accommodation that would enable her to perform her essential job functions is possible. Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 950 (8th Cir. 1999). The burden then shifts to the employer to show that it is unable to accommodate the plaintiff. Id.

Under the ADA, reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies. . . ." 42 U.S.C. § 12111(9). "This does not mean an employer is required to offer those accommodations in every case." Treanor v. MCI Telecomm. Corp., 200 F.3d 570, 575 (8th Cir. 2000). Job restructuring is a possible accommodation, but an employer is not required to reallocate essential functions of the employee's job. Id; Benson, 62 F.3d at 1112-13. We

assume, without deciding, that working from home may, in certain circumstances, be a reasonable accommodation. See Nesser v. Trans World Airlines, Inc., 160 F.3d 442, 446 (8th Cir. 1998) (declining to decide whether working at home may be reasonable); cf. Cehrs v. Northeast Ohio Alzheimer's Research Center, 155 F.3d 775, 782-83 (6th Cir. 1998) (rejecting per se rule that extended leave is not reasonable); Langon v. Dep't of Health & Human Servs., 959 F.2d 1053, 1060-61 (D.C. Cir. 1992) (working at home is possible reasonable accommodation under Rehabilitation Act).

The parties agree that Heaser's job duties included managing the inventory system, which involved order entry, invoicing, inventory and tracking revenues; gathering and organizing necessary data for marketing material production, including proofing copy; and maintaining archived and current files and filling customer orders, which included the creation of new file folders and the receipt and unpacking of cartons of literature.

Heaser contends that, given current technology, working from her home is a reasonable accommodation. She argues that she could log on to the computer system as necessary from her home to work with materials orders, invoicing, and budget reconciliation; courier service could have been used for other functions; and maintaining historical files could be done in the warehouses and on CD-ROM. Heaser further testified that the majority of her work could be done by computer or by phone, and that she could come to the Lyndale facility sporadically, although she is unable to be present full-time. She further asserts that Toro could have computerized the order system so that she would not have to work with carbonless paper and that Toro was moving to such a computerized system when they fired her.

The district court concluded that Heaser failed to show that she is capable of performing the essential functions of her job with reasonable accommodation because she did not show that remote access to Toro's computer system was feasible and

because she does not dispute that she cannot work with the carbonless paper, printed literature, and copiers that are central to her job.

We conclude that Heaser has failed to make a prima facie case because she has not shown that the use of a computer at her home and her avoidance of carbonless paper are reasonable accommodations. In support of its motion for summary judgment, Toro submitted an affidavit by an analyst in its information technology division that stated that the computer software necessary for Heaser's position, a program called Dataflex, could not have been used through remote access to Toro's computer systems. There is some evidence in the record that Toro was investigating the use of a more completely computerized system of order entry, but no evidence suggests that any such change is feasible or that it has occurred. Heaser asserts that Toro could have made the computer system work from her home and that Toro's use of carbonless paper is a method of communications inferior to that of computers. Both of these allegations are supported only by her conjecture, however, and are thus insufficient to create a genuine issue of material fact in this case. See Marler v. Missouri State Bd. of Optometry, 102 F.3d 1453, 1457 & n.6 (8th Cir. 1996) (conjecture insufficient to create issue of material fact); O'Bryan v. KTIV Television, 64 F.3d 1188, 1191 (8th Cir. 1995).

Toro was not required to make an overall change in its manner of conducting business to accommodate Heaser. See Buckles v. First Data Resources, Inc., 176 F.3d 1098, 1101 (8th Cir. 1999). Heaser has presented insufficient evidence that computerizing Toro's marketing services system was a reasonable accommodation. Job restructuring is a possible accommodation, but Toro was not required to create a new part-time position or to reallocate the essential functions of Heaser's job that she could not do–that is, work with orders on carbonless paper. See Treanor, 200 F.3d at 575; Benson, 62 F.3d at 1112-13. "It is well settled that an employer is under no obligation to reallocate the essential functions of a position that a qualified individual

-8-

must perform." Moritz, 147 F.3d at 788. We conclude, therefore, that Heaser has failed to make a prima facie showing that working from her home was a reasonable accommodation for her position.

Turning to Heaser's argument that Toro failed to engage in the necessary interactive process regarding reasonable accommodation, we note that Heaser failed to raise this argument in the district court. We decline to address the interactive process arguments in the first instance on appeal. See Bankcard Sys., Inc. v. Miller/Overfelt, Inc., 219 F.3d 770, 772 n.3 (8th Cir. 2000). Moreover, because we have already determined that Heaser has failed to show a genuine issue of material fact regarding reasonable accommodation, any claim based on this theory would likely fail. See Fjellestad, 188 F.3d at 953 ("[A]n employer who acts in bad faith in the interactive process will be liable if the jury can reasonably conclude that the employee would have been able to perform the job with accommodations.") (quoting Taylor v. Phoenixville Sch. Dist., 174 F.3d 142, 163 (3d Cir. 1999)); Cravens v. Blue Cross & Blue Shield of Kansas City, 214 F.3d 1011, 1022 (8th Cir. 2000) (discussing interactive process claim supported by evidence that created genuine issue of material fact regarding reasonable accommodation).

## III. ERISA

Lastly, Heaser contends that the district court should have used a standard of review less deferential than abuse of discretion when it reviewed, pursuant to 29 U.S.C. § 1132(a)(1)(B), the December 1996 termination of Heaser's short-term disability benefits. She also argues that even if the abuse of discretion standard is proper, the court should have determined that Toro, which is the Toro Plan administrator, unreasonably terminated Heaser's benefits under the Toro Plan, which provides for five months of short-term disability payments when an employee "is prevented from

performing the material and substantial duties of his or her occupation due to accidental injury or sickness." Appellee's App. at AA19, AA21.

"ERISA provides a plan beneficiary with the right to judicial review of a benefits determination." Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998); see 29 U.S.C. § 1132(a). It is undisputed that the Toro Plan gives the administrator discretionary authority to determine eligibility for benefits, so we would ordinarily review the administrator's decision for abuse of discretion. See Woo, 144 F.3d at 1160. "This deferential standard reflects our general hesitancy to interfere with the administration of a benefits plan." Layes v. Mead Corp., 132 F.3d 1246, 1250 (8th Cir. 1998). Under such standard, a reviewing court should consider only the evidence before the plan administrator when the claim was denied. Id. at 1251. A plaintiff may obtain less deferential review by presenting "material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to her." Woo, 144 F.3d at 1160. An alleged conflict or procedural irregularity must have some connection to the substantive decision reached. Id. at 1161. A claimant must offer evidence that "gives rise to serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim" for us to apply the less deferential standard. Layes, 132 F.3d at 1250 (internal quotation marks omitted).

The district court noted that when the recommending administrative officer decided in November of 1996 that terminating benefits was appropriate, the officer had Heaser's medical records and had also directly contacted one of Heaser's treating physicians, a rehabilitation specialist who had supported Heaser's disability from work in August of 1996. This physician stated that he no longer considered Heaser to be disabled and had recently told Heaser the same thing. A review of Heaser's record was also performed by a medical consultant specializing in pulmonary medicine. The

district court concluded that, on this evidence, the administrator's decision did not reflect an abuse of discretion.

Heaser contends that she is entitled to less deferential review of the administrator's decision because before the termination she was not examined by a doctor with expertise relating to her condition. Heaser suggests that this constitutes a procedural irregularity connected to the judgment analogous to that in Woo. We conclude that Woo does not support Heaser's argument for two reasons. First, in Woo our decision to use a less deferential standard rested first on a demonstrated financial conflict of interest. Id. Second, in that case we determined that a plan administrator's failure to obtain the opinion of a specialist constituted a procedural irregularity connected to the decision because only the opinion of an in-house medical consultant contradicted the remainder of the record before the administrator, which contained two opinions from treating physicians supporting disability based on an uncommon disease. Id. We concluded that the failure to obtain an expert opinion before denying benefits was a failure that led to a decision "reached without reflection and judgment," which warranted a less deferential standard of review. Id. (citation omitted). Heaser has not presented similar evidence here that Toro failed to thoroughly investigate her claim.

Heaser next contends that even under the abuse of discretion standard, Toro's determination was unreasonable, particularly given the determination of Dr. Dole that she could not return to work at Toro. Toro relied, however, on the opinion of another of Heaser's treating physicians and had before it Heaser's medical evidence, which did not indicate complete disability. Additionally, both the November and December of 1996 certification reports from Dr. Dole indicated only that Heaser's condition "may be permanent," which is not an unequivocal endorsement of disability and does not show that Toro abused its discretion, given the other evidence in the record. Cf. Layes, 132 F.3d at 1251-52 (holding that plan administrator not required to seek independent medical opinion when medical evidence relied upon by claimant insufficient to support

conclusion of disability).  We conclude, therefore, that Heaser has shown no abuse of discretion.

The judgment is affirmed.

LAY, Circuit Judge, dissenting.

The impact of today's decision is that an employer in an ADA case, at least in this circuit, will always win on summary judgment by simply asserting that a plaintiff-employee cannot be reasonably accommodated.  Regardless of a plaintiff's request for reasonable accommodation, a mere denial by the employer will always foreclose a plaintiff's disability claim and deny a plaintiff a jury trial and an opportunity to present a factual issue as to whether the accommodation requested is feasible.

There are several flaws in the majority's holding.  First and foremost, such a ruling completely overlooks the basic principles which govern a motion for summary judgment.  It ignores the fundamental rule that summary judgment may not be granted where the record presents a genuine dispute over a material fact.  Second, it fails to give recognition to the legal maxim that in order to grant summary judgment all the evidence must point one way and be susceptible of no reasonable inferences sustaining the position of the non-moving party.  The obvious corollary to this principle is that a motion for summary judgment requires the facts to be viewed in the light most favorable to the plaintiff by affording a plaintiff the benefit of all factual inferences.  These settled principles of law need no citation.

According to the majority, there are no genuine issues of material fact as to whether Heaser can be reasonably accommodated in order to allow her to continue working.  In all due respect, this overlooks the factual record.  Heaser's basic request of accommodation is that she be allowed to carry on her job at home, in an atmosphere

free from carbonless paper, printed literature, copiers, and polluted air. Toro asserts that these requested accommodations are not feasible for various reasons, including the fact that Heaser's job cannot be done from home or without carbonless paper. The majority opinion, however, appears to ignore the evidence presented by Heaser while giving sole credibility to the evidence presented by Toro. At the very least, Heaser's evidence demonstrates, providing all reasonable inferences to be drawn from it, factual issues as to whether her requested accommodations are feasible and therefore reasonable.

A closer look at the record shows that a thorough discussion never took place as to whether it was feasible for Heaser to work from home or without carbonless paper. In December 1996, Toro denied Heaser's short-term disability benefits. Subsequently, Heaser sent Toro a letter formally requesting work accommodations in her home. In the letter, Heaser explained that she was aware of other employees who accessed Toro's computer system from home. Thus, Heaser requested a phone line, phone, computer, and fax machine to use from her home in order to fulfill her position as Consumer Marketing Services Coordinator.

On January 28, 1997, Toro wrote to Heaser and denied her requested accommodation. Instead, Toro offered Heaser the alternative of returning to the Lyndale facility, but in a different location. Toro indicated that this was the only alternative available to Heaser and that if she did not accept this offer by February 3, 1997, Toro would conclude that she had voluntarily resigned.

Heaser responded to Toro's letter on February 3, 1997. In her letter, Heaser explained that the temporary location that Toro proposed had air quality problems. Heaser based this assertion on the health problems of another Toro employee who was located in the same area. Heaser then outlined a series of proposed accommodations which would enable her to return to work at Toro's Lyndale facility. These requests

included removing an air freshener from one of the women's bathrooms, creation of a fragrance free, chemical free area, using non-toxic cleaning formulas, installing an air purifier, and the assignment of a resource person to whom she could bring her concerns about the environment. Heaser proposed a thirty-day test period to try the accommodations.

On March 6, 1997, Toro met with Heaser to discuss her proposed accommodations. Toro indicated that it would be willing to remove the air freshener from one of the bathrooms and that it would talk to the cleaning crew about using alternative cleaning solutions.[3] Heaser indicated in the meeting that she was willing to return to Toro and "give it a try." Before Heaser returned to work, however, Toro requested a letter from Heaser's doctor stating that she was fit to return to work without further risk of health problems.

Heaser's doctor sent Toro a letter explaining that unless Heaser could avoid "plastics, carbonless paper, copiers and their fumes, exhaust fumes, other personnel who may be wearing perfumes, colognes, etc., it [would be] very difficult [for her] to succeed in gainful employment." (Letter from Dole, M.D. to Toro at 2.)

On March 13, 1997, Toro sent Heaser a letter stating that it did not have a position consistent with her health requirements and that the accommodations she sought were too broad and far-reaching. Toro further explained that it was left with no alternative but to terminate her employment. Thus, the interactive process between Heaser and Toro was never completed because Toro terminated Heaser before she could return to work.

---

[3]Such a response clearly falls short of a reasonable accommodation. The offer not only makes it prohibitive for her to carry on her job but also constitutes an unreasonable, adamant response that Toro cannot remove pollutants from the air.

In support of her request to work from home, Heaser presented evidence that she had previously worked from home over a period of three months. During this time, Heaser worked at the Toro facility when she was able and worked from home when she was too sick to remain at work. Heaser believes she adequately performed her job from home, and there is no evidence in the record to indicate that Toro had a problem with Heaser's performance during this time. This evidence, however, appears to have been overlooked in the majority's opinion.

Further, Heaser presented evidence showing that other Toro employees have been allowed to work from home. While these employees had different job functions than Heaser, they were similarly situated because of their need to remotely access the computer system. Nonetheless, the majority ignores Heaser's claim that Toro can provide her with adequate access to its computer system, instead labeling it "conjecture." Instead, the majority relies on an affidavit by an analyst from Toro's information technology division to conclude that Heaser could not remotely access the software needed for her job. According to the majority's analysis, Heaser could not work from home because the computer software <u>necessary</u> for her position, a program called Dataflex, could not be remotely accessed.

There are two problems with the majority's analysis. First, the evidence must be viewed in the light most favorable to Heaser. Why is it then that Heaser's assertion about accessing the computer system from home is simply "conjecture," yet Toro's claim that the computer system cannot be accessed remotely is considered undisputed fact?

Second, the affidavit the majority relies on does not say that the Dataflex software is <u>necessary</u> for Heaser's position. It says that Heaser was using the Dataflex

software at the time she stopped working.[4]  There appears to be nothing in the record that defines the use of Dataflex software as an essential function of Heaser's job.  It seems possible, therefore, that Heaser could have done her job using other software programs that could remotely access the Toro computer system.  In fact, in the affidavit, Toro's analyst explains that other software programs have been used by employees to remotely access Toro's computer system.[5]  The evidence also indicates that electronic documents could have been exchanged between Heaser and Toro via a courier system.  None of this evidence appears to have been considered by the majority.

With respect to Heaser's request to perform her job without carbonless paper, the majority feels that Heaser failed to show that avoiding carbonless paper is a reasonable accommodation.  Once again the majority places great weight on Toro's evidence while ignoring the evidence presented by Heaser.  It is important to note that using carbonless paper is not one of the functions of Heaser's job,[6] it is simply a tool

---

[4]The affidavit of Toro's analyst says in relevant part:  "The principal software Lynn Heaser used in her job at the time she stopped working, Dataflex, could not be used from a remote location."  (Bailey Aff. ¶ 3.)

[5]Although Toro's analyst indicated that remotely accessed software programs are not designed to operate all day long, the record shows that Heaser asserted she could do the majority of her work off-line and send it to Toro's computer system periodically.  Whether this request was reasonable should be weighed by a jury, rather than foreclose such traditional review by holding as a matter of law that what Toro said must be accepted as undisputed.

[6]The record shows that the major functions of Heaser's job were:

Manage distribution of merchandising materials to distributors, and direct dealers.  Coordinate all facets of inventory system to ensure materials/billing are efficiently and cost effectively managed.  Develop

-16-

that Heaser typically used to perform one of the functions of her job - ordering literature.

Heaser presented sufficient evidence to show that she could place orders without using carbonless paper. According to Heaser, she could use a computer and electronic forms to place orders, a practice that was becoming more and more common at the time and is practically an industry standard today. Heaser also presented evidence that with the assistance of a phone, fax machine, courier system or e-mail, any of the ordering could have been done without relying on carbonless paper.

The majority, however, concluded that Heaser could not be reasonably accommodated. The majority apparently reached this conclusion because it defined the use of carbonless paper as an essential function of Heaser's job, instead of a tool to perform her job. Nowhere in the record is the use of carbonless paper defined as an essential function of Heaser's job. As such, it is clearly in error for the majority to simply hold that Heaser must use carbonless paper. Instead, once Heaser proposes using electronic forms to complete the task of ordering literature, Toro has the burden of showing that converting its ordering system to electronic forms is too much of a burden on its business. Before we consider whether this accommodation is a burden, however, there is a material issue of fact that only a jury can resolve: whether Heaser can avoid using carbonless paper by using electronic forms to do the ordering.

Clearly, the evidence presented by Heaser is sufficient to make a prima facie showing that she can do her job from home and without carbonless paper. This is not

---

and support Co-op Sign Programs for Toro and Lawn Boy. Coordinate with mass order entry position on management of overall system. Provide support for Merchandising Manager as needed.

(Arms Aff. Ex. A.)

to say that the accommodations requested by Heaser are necessarily feasible, rather the point is that factual disputes exist as to whether Heaser can be reasonably accommodated. As such, when material issues of fact are present, summary judgment is not appropriate.

With respect to the interactive process regarding reasonable accommodation, the majority faults Heaser in her failure to assert before the district court the question of exercising good faith by failing to engage in an interactive process. See Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944 (8th Cir. 1999). However, examination of the district court opinion shows that both parties presented arguments of their participation in the interactive process. Further, Toro does not argue procedural default on appeal.

Implicit in the entire process of accommodation under the ADA is that the parties enter into an interactive process. 42 U.S.C. § 12112(a). According to the record, Heaser and Toro attempted to engage in this process, but before Heaser could attempt to work under the conditions defined by Toro, it terminated her. In other words, the process was never completed.

Based on Fjellestad, when an employer acts in bad faith in the interactive process, a jury can reasonably conclude that the employee would have been able to perform the job with accommodations. 188 F.3d at 953. The majority never considers whether Toro acted in bad faith because it uses waiver to sidestep the entire issue. To ignore this issue does a complete injustice to the evidence presented by both Heaser and Toro.

Based on the record, Heaser informed Toro that she would "try" to work under Toro's terms of accommodation, yet Toro terminated her without further discussion. The majority opinion slights the context in which this abrupt termination of negotiation

-18-

took place: that the employer decided it would terminate plaintiff because they had heard that plaintiff was going to sue them.[7] This clearly presents a factual issue as to whether Toro engaged in the interactive process in good faith.

Nonetheless, whether Heaser waived her arguments on the interactive process or not, there are clearly issues of material fact in this case that make summary judgment inappropriate. As such, I would reverse the grant of summary judgment on the issue of disability discrimination[8] and remand the case to the district court for further proceedings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[7]The record indicates that in the presence of over 100 Toro employees, the director of facilities announced that Toro's legal department had instructed him to ignore Heaser's concerns and pleas for help because Heaser was planning to sue the company.

[8]In view of my dissent on the central issue, I choose not to pass on the ERISA issue.