WOLLMAN, Chief Judge.
Lynn M. Heaser appeals from the district court’s[1] grant of summary judgment on her employment discrimination claims under the Americans with Disabilities Act of 1990(ADA), 42 U.S.C. §§ 12101-12213, and the Minnesota Human Rights Act (MHRA), MinmStat. §§ 363.01-363.15, in favor of her former employer, Toro Company, Inc. (Toro), and on her claims under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461, in favor of Toro and the Toro STD Claims Management Plan (Toro Plan). We affirm.
*829 I.
We recite the facts in the light most favorable to Heaser. In 1990, Heaser began working as an administrative secretary at Toro’s facility on Lyndale Avenue (Lyndale facility) in Bloomington, Minnesota. In 1993, she was promoted to the position of marketing services coordinator, which she held until her termination on March 14, 1997. As marketing services coordinator, Heaser ensured that Toro dealers and distributors received marketing materials in a timely fashion. To do so, she took orders for materials by phone and in person and processed the information on carbonless paper forms and by computer. She also maintained the historical files of various marketing materials and created literature racks of promotional literature.
In 1991, Heaser developed health problems, which increased in severity during her employment with Toro and resulted in various medical diagnoses, including petrochemical sensitivity, fibromyalgia, allergies, and multiple chemical sensitivities. Heaser suspected that her health problems were connected to air quality at the Lyn-dale facility and alerted Toro’s management officials to her concerns.
In May of 1996, Heaser informed her supervisor that she was having trouble remaining at work for entire days because of illness. Her supervisor inquired of the human resources department whether working at home would be an option for Heaser and was told that although Toro did not have a work-at-home policy, some employees had been permitted to do so for short periods. Heaser’s supervisor relayed the information to Heaser and told her that, temporarily, she could leave the Lyndale facility when she was too sick to remain at work, an option that Heaser exercised for three months. Although no performance deficiencies were noted during that time period, Heaser admitted that she was not fully performing her job. In an attempt to accommodate Heaser’s health concerns, Toro moved her to a different office, but this action failed to alleviate Heaser’s difficulties. Heaser sought medical assistance from several different physicians during 1996 and ultimately took a medical leave of absence from Toro. From September to December of 1996, Heaser received four months of short-term disability benefits from the Toro Plan.
On December 31, 1996, after receiving notice that her short-term disability benefits were being terminated, Heaser requested that she be allowed to work from her home. On January 28, 1997, Toro denied this request, but offered to move Heaser to a different location within the Lyndale facility. Heaser responded that the change in location would not accommodate her needs but that she would be willing to discuss further possible changes, including the removal of the air freshener system from one of the women’s bathrooms, the use of non-toxic cleaning solutions in her work area, and the installation of an air purifier in a separate office for her. Heaser also stated that she was concerned about handling the carbonless paper used for orders. On March 6, 3997, Heaser met with her supervisor, the manager of employee relations, and Dale Irvin, Toro’s director of human resources and facility operations, who indicated that Toro would be willing to remove the freshener from one of the bathrooms and encourage the use of non-toxic cleaning solutions, but expressed concern that Heaser would remain unable to perform the job. Heaser stated that she would like to “give it a try,” and Irvin requested that Heaser provide a letter from her doctor stating that she was fit to return to work. On March 13, 1997, Toro received from Dr. Michael Dole, one of Heaser’s treating physicians, *830 a March 3 letter stating that “unless [Heaser] is able to avoid plastics, carbon-less paper, copiers and their fumes, exhaust fumes, other personnel who may be wearing perfumes, colognes, etc., it is very difficult to succeed in gainful employment.” Immediately thereafter, Toro terminated Heaser.
Heaser subsequently filed suit in district court, alleging disability discrimination under federal and state laws and seeking judicial review of Toro’s denial of her short-term disability benefits. Heaser argues that the district court erred when it granted summary judgment in Toro’s favor because she would have been able to perform her job with reasonable accommodation and because Toro failed to meet its obligation to engage in an interactive process with Heaser. Heaser also contends that the court erred when it dismissed her ERISA claims.
We review the district court’s grant of summary judgment de novo. Henerey v. City of St Charles, 200 F.3d 1128, 1131 (8th Cir.1999). Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Id.; Fed.R.Civ.P. 56(c). “[Sjummary judgment should seldom be granted in discrimination cases.” Bassett v. City of Minneapolis, 211 F.3d 1097, 1099 (8th Cir.2000).
II. Disability Discrimination[2]
The ADA affords protection from discrimination to any “qualified individual with a disability.” 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, Heaser must show (1) that she has a disability within the meaning of the ADA, (2) that she is qualified to perform the essential functions of her job, with or without reasonable accommodation, and (3) that she suffered an adverse employment action because of her disability. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1135 (8th Cir.1999) (en banc). Discrimination includes “not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer].” 42 U.S.C. § 12112(b)(5)(A). The proof necessary for discrimination cases is flexible and varies with the specific facts of each case. Young v. Warner-Jenkinson Co., Inc., 152 F.3d 1018, 1022 (8th Cir.1998).
For the purposes of this appeal, Toro does not dispute that Heaser is disabled within the meaning of the ADA, and Heaser concedes that she is not qualified to perform the marketing services coordinator job without reasonable accommodation. The question presented, then, is whether Heaser has shown that she is a qualified individual within the meaning of the ADA because she can perform the essential functions of her job with a reasonable accommodation.
To be a qualified individual within the meaning of the ADA, Heaser must (1) possess the requisite skill, education, experience, and training for her position; and (2) be able to perform the essential job functions, with or without reasonable accommodation. Moritz v. Frontier Airlines, Inc., 147 F.3d 784, 786-87 (8th Cir.1998). Only the second part of the defini *831 tion is in question in this case. Although an ADA plaintiff retains the ultimate burden of proving that she is a qualified individual, an employer who disputes the plaintiffs claim that she can perform the essential functions of a job must put forth evidence establishing those functions. Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1113 (8th Cir.1995). An essential function may be established by evidence that includes:
(1) the employer’s judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the current work experience of incumbents in similar jobs.
Moritz, 147 F.3d at 787 (internal quotation marks omitted). A plaintiff need only make a facial showing that a reasonable accommodation that would enable her to perform her essential job functions is possible. Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 950 (8th Cir.1999). The burden then shifts to the employer to show that it is unable to accommodate the plaintiff. Id.
Under the ADA, reasonable accommodations may include “job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies....” 42 U.S.C. § 12111(9). “This does not mean an employer is required to offer those accommodations in every case.” Treanor v. MCI Telecomm. Corp., 200 F.3d 570, 575 (8th Cir.2000). Job restructuring is a possible accommodation, but an employer is not required to reallocate essential functions of the employee’s job. Id; Benson, 62 F.3d at 1112-13. We assume, without deciding, that working from home may, in certain circumstances, be a reasonable accommodation. See Nesser v. Trans World Airlines, Inc., 160 F.3d 442, 446 (8th Cir.1998) (declining to decide whether working at home may be reasonable); cf. Cehrs v. Northeast Ohio Alzheimer’s Research Center, 155 F.3d 775, 782-83 (6th Cir.1998) (rejecting per se rule that extended leave is not reasonable); Langon v. Dep’t of Health & Human Servs., 959 F.2d 1053, 1060-61 (D.C.Cir.1992) (working at home is possible reasonable accommodation under Rehabilitation Act).
The parties agree that Heaser’s job duties included managing the inventory system, which involved order entry, invoicing, inventory and tracking revenues; gathering and organizing necessary data for marketing material production, including proofing copy; and maintaining archived and current files and filling customer orders, which included the creation of new file folders and the receipt and unpacking of cartons of literature.
Heaser contends that, given current technology, working from her home is a reasonable accommodation. She argues that she could log on to the computer system as necessary from her home to work with materials orders, invoicing, and budget reconciliation; courier service could have been used for other functions; and maintaining historical files could be done in the warehouses and on CD-ROM. Heaser further testified that the majority of her work could be done by computer or by phone, and that she could come to the Lyndale facility sporadically, although she is unable to be present full-time. She further asserts that Toro could have computerized the order system so that she would not have to work with carbonless *832 paper and that Toro was moving to such a computerized system when they fired her.
The district court concluded that Heaser failed to show that she is capable of performing the essential functions of her job with reasonable accommodation because she did not show that remote access to Toro’s computer system was feasible and because she does not dispute that she cannot work with the carbonless paper, printed literature, and copiers that are central to her job.
We conclude that Heaser has failed to make a prima facie case because she has not shown that the use of a computer at her home and her avoidance of carbonless paper are reasonable accommodations. In support of its motion for summary judgment, Toro submitted an affidavit by an analyst in its information technology division that stated that the computer software necessary for Heaser’s position, a program called Dataflex, could not have been used through remote access to Toro’s computer systems. There is some evidence in the record that Toro was investigating the use of a more completely computerized system of order entry, but no evidence suggests that any such change is feasible or that it has occurred. Heaser asserts that Toro could have made the computer system work from her home and that Toro’s use of carbonless paper is a method of communications inferior to that of computers. Both of these allegations are supported only by her conjecture, however, and are thus insufficient to create a genuine issue of material fact in this case. See Marler v. Missouri State Bd. of Optometry, 102 F.3d 1453, 1457 & n .6 (8th Cir.1996) (conjecture insufficient to create issue of material fact); O’Bryan v. KTIV Television, 64 F.3d 1188, 1191 (8th Cir.1995).
Toro was not required to make an overall change in its manner of conducting business to accommodate Heaser. See Buckles v. First Data Resources, Inc., 176 F.3d 1098, 1101 (8th Cir.1999). Heaser has presented insufficient evidence that computerizing Toro’s marketing services system was a reasonable accommodation. Job restructuring is a possible accommodation, but Toro was not required to create a new part-time position or to reallocate the essential functions of Heaser’s job that she could not do—that is, work with orders on carbonless paper. See Treanor, 200 F.3d at 575; Benson, 62 F.3d at 1112-13. “It is well settled that an employer is under no obligation to reallocate the essential functions of a position that a qualified individual must perform.” Moritz, 147 F.3d at 788. We conclude, therefore, that Heaser has failed to make a prima facie showing that working from her home was a reasonable accommodation for her position.
Turning to Heaser’s argument that Toro failed to engage in the necessary interactive process regarding reasonable accommodation, we note that Heaser failed to raise this argument in the district court. We decline to address the interactive process arguments in the first instance on appeal. See Bankcard Sys., Inc. v. Miller/Overfelt, Inc., 219 F.3d 770, 772 n. 3 (8th Cir.2000). Moreover, because we have already determined that Heaser has failed to show a genuine issue of material fact regarding reasonable accommodation, any claim based on this theory would likely fail. See Fjellestad, 188 F.3d at 953 (“[A]n employer who acts in bad faith in the interactive process will be liable if the jury can reasonably conclude that the employee would have been able to perform the job with accommodations.”) (quoting Taylor v. Phoenixville Sch. Dist., 174 F.3d 142, 163 (3d Cir.1999)); Cravens v. Blue Cross & Blue Shield of Kansas City, 214 F.3d 1011, 1022 (8th Cir.2000) (discussing interactive *833 process claim supported by evidence that created genuine issue of material fact regarding reasonable accommodation).
III. ERISA
Lastly, Heaser contends that the district court should have used a standard of review less deferential than abuse of discretion when it reviewed, pursuant to 29 U.S.C. § 1132(a)(1)(B), the December 1996 termination of Heaser’s short-term disability benefits. She also argues that even if the abuse of discretion standard is proper, the court should have determined that Toro, which is the Toro Plan administrator, unreasonably terminated Heaser’s benefits under the Toro Plan, which provides for five months of short-term disability payments when an employee “is prevented from performing the material and substantial duties of his or her occupation due to accidental injury or sickness.” Ap-pellee’s App. at AA19, AA21.
“ERISA provides a plan beneficiary with the right to judicial review of a benefits determination.” Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir.1998); see 29 U.S.C. § 1132(a). It is undisputed that the Toro Plan gives the administrator discretionary authority to determine eligibility for benefits, so we would ordinarily review the administrator’s decision for abuse of discretion. See Woo, 144 F.3d at 1160. “This deferential standard reflects our general hesitancy to interfere with the administration of a benefits plan.” Layes v. Mead Corp., 132 F.3d 1246, 1250 (8th Cir.1998). Under such standard, a reviewing court should consider only the evidence before the plan administrator when the claim was denied. Id. at 1251. A plaintiff may obtain less deferential review by presenting “material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator’s fiduciary duty to her.” Woo, 144 F.3d at 1160. An alleged conflict or procedural irregularity must have some connection to the substantive decision reached. Id. at 1161. A claimant must offer evidence that “gives láse to serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator’s whim” for us to apply the less deferential standard. Layes, 132 F.3d at 1250 (internal quotation marks omitted).
The district court noted that when the recommending administrative officer decided in November of 1996 that terminating benefits was appropriate, the officer had Heaser’s medical records and had also directly contacted one of Heaser’s treating physicians, a rehabilitation specialist who had supported Heaser’s disability from work in August of 1996. This physician stated that he no longer considered Heaser to be disabled and had recently told Heaser the same thing. A review of Heaser’s record was also performed by a medical consultant specializing in pulmonary medicine. The district court concluded that, on this evidence, the administrator’s decision did not reflect an abuse of discretion.
Heaser contends that she is entitled to less deferential review of the administrator’s decision because before the termination she was not examined by a doctor with expertise relating to her condition. Heaser suggests that this constitutes a procedural irregularity connected to the judgment analogous to that in Woo. We conclude that Woo does not support Heaser’s argument for two reasons. First, in Woo our decision to use a less deferential standard rested first on a demonstrated financial conflict of interest. Id. Second, in that case we determined that a plan administrator’s failure to obtain the opinion of a specialist constituted a proce *834 dural irregularity connected to the decision because only the opinion of an in-house medical consultant contradicted the remainder of the record before the administrator, which contained two opinions from treating physicians supporting disability based on an uncommon disease. Id. We concluded that the failure to obtain an expert opinion before denying benefits was a failure that led to a decision “reached without reflection and judgment,” which warranted a less deferential standard of review. Id. (citation omitted). Heaser has not presented similar evidence here that Toro failed to thoroughly investigate her claim.
Heaser next contends that even under the abuse of discretion standard, Toro’s determination was unreasonable, particularly given the determination of Dr. Dole that she could not return to work at Toro. Toro relied, however, on the opinion of another of Heaser’s treating physicians and had before it Heaser’s medical evidence, which did not indicate complete disability. Additionally, both the November and December of 1996 certification reports from Dr. Dole indicated only that Heaser’s condition “may be permanent,” which is not an unequivocal endorsement of disability and does not show that Toro abused its discretion, given the other evidence in the record. Cf. Layes, 132 F.3d at 1251-52 (holding that plan administrator not required to seek independent medical opinion when medical evidence relied upon by claimant insufficient to support conclusion of disability). We conclude, therefore, that Heaser has shown no abuse of discretion.
The judgment is affirmed.

. The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

. We have noted that the MHRA parallels the ADA, Wilking v. County of Ramsey, 153 F.3d 869, 872 (8th Cir.1998), and neither party contests the district court’s treatment of Heaser’s MHRA claims as co-extensive with her ADA claims.